CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 6 2005

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

VERNON R. LINEBERRY, )
    Plaintiff, )
 )
 )
v. )   Case No. 7:04-CV-00601
 )
JO ANN B. BARNHART, )  By:  Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY, )        United States Magistrate Judge
    Defendant. )

## MEMORANDUM OPINION

Plaintiff Vernon R. Lineberry ("Lineberry") brings this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the court on cross-motions for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision. Plaintiff sustained an ankle injury in an automobile accident on March 12, 2002, and the Commissioner determined that he was disabled for a closed period from that date until March 31, 2003, at which time plaintiff had restored function of his left leg allowing him to walk effectively. (Administrative Record, hereinafter "R." at 19). Plaintiff appeals the Commissioner's decision that he was not disabled after that date.

Plaintiff's appeal of the Commissioner's decision giving him only a closed period of benefits centers around new evidence submitted to the Appeals Council after the administrative law judge's ("ALJ's") decision. This new evidence consists of a February 13, 2004 report from the Department of Vocational Rehabilitation Services stating that "he does not appear ready for

work at this time." (R. 191) Plaintiff states that at the hearing, but off the record, the ALJ advised plaintiff to seek vocational rehabilitation which could either place "claimant in a job that he could do with his physical limitations or provide the additional evidence necessary to prove his total disability." (Plaintiff's Brief at 1-2)

Regardless of whether the ALJ made such a suggestion to plaintiff, the issue is whether the report from the Virginia Department of Rehabilitation Services, dated February 13, 2004, requires a remand of this case to the Commissioner to allow the agency to consider this information. Upon consideration of the appropriate standard for review of such late breaking evidence, no such remand is necessary in this case as it cannot be credibly argued that this report creates a reasonable possibility that the new evidence would have changed the outcome. As such, the Commissioner's motion for summary judgment must be granted and this case be stricken from the active docket of the court.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

2

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff was thirty-four years old at the time of the ALJ's decision, had a ninth grade education, and previously worked helping his father on the family farm by performing general labor. (R. 209, 210) On March 12, 2002, plaintiff was involved in an automobile accident in which he broke his left ankle and right kneecap. (R. 211) Plaintiff's application for benefits was denied initially and upon reconsideration.

Following a hearing on August 13, 2003, the ALJ issued a decision that plaintiff was entitled to a closed period of disability from March 12, 2002 through March 31, 2003. (R. 22) The ALJ found, however, that as of April 1, 2003, plaintiff retained the residual functional capacity ("RFC") to perform a significant range of sedentary work that allowed him to alternate between sitting and standing. (R. 21) Plaintiff had the capacity to understand, remember, and carry out simple instructions. (R. 21) The ALJ found, therefore, that as of April 1, 2003, plaintiff ceased to be disabled under the Act. When the Appeals Council denied plaintiff's request for review, the ALJ's decision became ripe for judicial review under 42 U.S.C. § 405(g). This action was then filed.

In the March 12, 2002 automobile accident, plaintiff sustained a right ankle contusion, a right open patella fracture, a left clavicle fracture, and a calcaneal fracture. (R. 45, 126) Plaintiff was released from the hospital after eight days of treatment, provided pain medication, and restricted in his activities. (R. 120, 130)

Over the course of a year's treatment with Dr. Ritchie, plaintiff demonstrated regular progress. On an April 9, 2002 visit, Dr. Ritchie reported that plaintiff was doing well since his

discharge, that weight-bearing was tolerated in plaintiff's right lower leg in a cylindrical cast, and that plaintiff indicated that his pain was slowly improving. (R. 147)

In a May 6, 2002 visit, Dr. Ritchie evaluated plaintiff and reported that incisions on his right knee were well-healed, although he noted that plaintiff had a minimal range of motion in the knee. (R. 146) Dr. Ritchie noted that plaintiff's treatment of his left clavicle fracture was conservative and that he would be placed in a fracture boot, although Dr. Ritchie warned plaintiff against bearing weight on the fracture boot yet. (R. 146) Dr. Ritchie recommended range of motion exercises for plaintiff's left ankle and placed plaintiff's right knee in a brace. (R. 146)

On June 24, 2002, Dr. Ritchie noted that plaintiff had no pain on palpation around his heel, had restricted subtalar motion, and had pain in his ankle with flexion extension. (R. 144) Dr. Ritchie encouraged plaintiff to begin moving his right knee and to begin quadriceps and hamstring strengthening exercises at home. (R. 144) Plaintiff was allowed to bear weight on his cast boot. (R. 144) Plaintiff was encouraged to begin walking on his injured heel. (R. 144)

On August 14, 2002, Dr. Ritchie stated that plaintiff had been doing well walking as tolerated in a fracture boot and continued with a brace on his right knee. (R. 142) X-rays showed that plaintiff's heel fracture was healing and that the plate was in place. (R. 142) Dr. Ritchie reported that he was going to allow plaintiff to begin wearing a normal shoe in place of the fracture boot, and that he would advise plaintiff to begin "a slow wean" toward discontinuing use of the brace. (R. 142) Dr. Ritchie also indicated that plaintiff would benefit from a graduated physical therapy regimen. (R. 144)

On April 3, 2002, Dr. Ritchie reported that plaintiff continued to suffer from significant pain in his right knee and left heel. (R. 158) When examined, plaintiff had some tenderness in

4

his knee but Dr. Ritchie noted that plaintiff had a good range of motion and that his extensor mechanism was intact. (R. 158) X-rays demonstrated that plaintiff's heel and knee had healed. (R. 158) Dr. Ritchie advised plaintiff to continue weight bearing as tolerated and to continue strengthening exercises. (R. 158)

At plaintiff's administrative hearing on August 13, 2003, H.C. Alexander, III, M.D., a board-certified internist and hematologist, testified as a medical expert. (R. 225) Dr. Alexander testified that while from March 12, 2002 through March 3, 2003, plaintiff's knee and ankle impairments met listing 1.2A of the requirements of 20 C.F.R. pt. 404, subpt. P, app. 1, once Dr. Ritchie allowed plaintiff to remove his brace and bear weight on the knee, plaintiff no longer met the listing. (R. 234, 232) Further, Dr. Alexander testified that there was no medical evidence that plaintiff had a back impairment that interfered with his ability to sit for long periods. (R. 235) Dr. Alexander advised that plaintiff was capable of working and should continue exercising to strengthen his knee, leg, and ankle. (R. 235)

James Williams, a vocational expert ("VE"), also testified at plaintiff's hearing. (R. 238) The ALJ posed to Williams a hypothetical question concerning an individual's age, education, and work experience, who could perform sedentary work, who required a sit/stand option requiring that he not be on his feet for more than fifteen to twenty minutes at a time and no more than two to four hours out of an eight-hour day. Williams indicated that such person could perform jobs including being a clerk, a receptionist information clerk, or a ticket and toll collector an that these jobs existed in significant numbers in the economy. (R. 240)

5

## ANALYSIS

Plaintiff does not contest that the ALJ's decision was supported by substantial evidence given the material in the record at the time he made his decision. Indeed, the court's review of the evidence indicates that the ALJ's decision was supported by substantial evidence. The ALJ determined that from March 12, 2002 until March 31, 2003, plaintiff's left lower extremity met listing 1.02A of 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.02A because he was unable to bear weight. (R. 19) On March 3, 2003, Dr. Ritchie noted that plaintiff's x-rays demonstrated a healed fracture of the right calcaneus as well as the left patella. (R. 158) Dr. Ritchie also determined that plaintiff could bear weight as tolerated, that plaintiff's patellar tendon had healed nicely, that plaintiff had a good range of motion, and that plaintiff's extensor mechanism was intact. (R. 158) As a result, the ALJ determined that as of April 1, 2003, plaintiff no longer met the listing.

Because there was no evidence that plaintiff was unable to walk without a walker, two crutches, or two canes, that plaintiff was unable to carry out routine ambulatory activities, or that plaintiff was unable to climb a few steps at a reasonable pace without the use of handrails, there similarly was no evidence supporting the notion that plaintiff met the listing of 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00B2b, having an "inability to ambulate effectively."

Instead, the major issue presented in this case is that plaintiff provided additional material to the Appeals Council that had not been before the ALJ. When a claimant seeks review by the Appeals Council, the Council first makes a procedural decision to either grant or deny review. If the Appeals Council denies review, the denial renders final the decision of the ALJ. It is thus the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that

6

is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967-981, 416.1467-1481 (2004). The Appeals Council must consider evidence submitted to it when it is deciding whether to grant review, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Where the Appeals Council accepted the new evidence, but denied review, the Fourth Circuit requires that reviewing courts consider the record as a whole, including the new evidence, in order to determine whether the decision of the ALJ is supported by substantial evidence. Id.

In Bryant v. Barnhart, No. 6:04-CV-00017, slip op. at 9, 2005 U.S. Dist. LEXIS 15516, at *14-15 (W.D. Va. Jan. 21, 2005), the court held when the Appeals Council fails to provide an explanation for its consideration of additional evidence, reviewing courts should determine whether the additional evidence creates a "conflict," is "contradictory," or "calls into doubt any decision grounded in the prior medical reports." Id. (internal citation omitted). If the new evidence creates conflict, is contradictory, or calls into doubt any decision grounded in prior medical reports, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, the case can be decided on the existing record without the necessity of a remand.

Here, the new evidence provided by plaintiff consisted of a report from the Department of Vocational Rehabilitative Services. (See R. 190-97) The report indicates that plaintiff was given vocational testing to assess his ability to perform certain kinds of work, but that testing had been

discontinued after two-and-a-half hours because plaintiff said he needed to go home because of pain. (R. 193) The report's conclusion that plaintiff "does not appear ready for work at this time" appears based solely on the fact that plaintiff alleged to be in pain and went home. (R. 191)

On its face, the vocational report does not require a remand. First, there are no medical findings in the vocational report, as it is not a report from a medical source. Instead, it merely parrots plaintiff's subjective complaints. Second, plaintiff's argument does not consider the entirety of the vocational report. Instead, plaintiff pulls one clause out of one sentence in the report, and disregards the remainder of the report. When taken in context, the report does not indicate that plaintiff is completely disabled or unable to work. To be sure, the report states that "he does not appear ready for work at this time," (R. 191), but that opinion appears to have been reached because "there is no way to determine his stamina, work tolerance, dependability, attendance at this time. He was able to complete about 3 hours in evaluation; however, he appeared in pain and indicated that he needed to leave around lunch time." (R. 191) Contrary to plaintiff's assertion that the report compels a conclusion of disability, the report states that "it would appear that Mr. Lineberry may have potential for competitive employment in the future." (R. 191) The report suggests that plaintiff "appears to be a good candidate for Work Adjustment Training (WAT) to see if he has the work tolerance to work part-time." (R. 191) On the issue of jobs, the report states "[i]f Mr. Lineberry can get his pain under control and have transportation to and from work and the WAT is successful, the following jobs might be considered for him: Sales cashier: video store, gas station attendant (where he can sit most of the time). He may be able to work in a parts store (automotive, farm supply) but will probably need computer skills

8

training along with an OJT." (R. 192) On balance, therefore, a review of the entirety of the vocational report submitted by plaintiff to the Appeals Council does not support plaintiff's assertion that this report could possibly change the outcome of the ALJ's decision. Indeed, consideration of the report in its entirety compels the opposite conclusion.

There is another reason why there is no reasonable possibility that this vocational report could change the outcome of the ALJ's decision. Even if one credits plaintiff's reading of the report's tenuous observation that plaintiff "does not appear ready for work at this time," (R. 191), the report is not provided by a medical source, and thus is only to be accorded the weight of a lay opinion. The regulations require that the Commissioner only use acceptable medical sources such as licensed physicians, licensed osteopaths, licensed or certified psychologists, and licensed optometrists in determining one's RFC. See 20 C.F.R. §§ 404.1513, 416.913. Regarding medical matters such as RFC assessments, vocational experts, such as Gail D. Hoofnagle, who prepared this report, are only entitled to the weight given to any other lay witness.

Given that the ALJ's previous assessment was based on ample medical evidence (R. 18-21), there is no reasonable possibility that this non-medical vocational report could cause the ALJ to change his decision. The decision of the ALJ was based on a review of plaintiff's medical records and the opinions of his treating physician along with the expert medical testimony of Dr. Alexander. Plaintiff does not challenge the ALJ's decision based on the record before him. Rather, plaintiff's only suggestion of error is that the Appeals Council should have granted review of the ALJ's decision and remanded the case for further consideration in light of the vocational report. There is, however, no medical evidence or opinion in the vocational report,

9

nor does it purport to constitute such an opinion. As regards plaintiff's medical condition, all the vocational report does is repeat plaintiff's subjective symptoms. Nothing in this report provides any basis to suggest any alteration in the decision of the ALJ based on the evidence from medical sources contained in the administrative record.

Plaintiff counters this argument by contending that the weight to be assigned to this vocational report was a matter to be determined by the ALJ, necessitating a remand. While it is true that the ALJ is required to apply the regulations and rulings to assign appropriate weight to the evidence in the record, the decision to remand a case for further administrative consideration is for the court to consider under Wilkins. Following Wilkins, given this record and the nature and content of the late breaking vocational report, there is no reasonable possibility that it could have changed the ALJ's decision in this case. Thus, a remand is not appropriate in this case.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the ALJ's determination of plaintiff's RFC and the resulting conclusion that plaintiff was not disabled. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). Considering the nature and content of the vocational report, there is no reasonable possibility that it would change the ALJ's decision. As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

## CONCLUSION

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in

10

total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 15th day of September, 2005.

United States Magistrate Judge